**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SENDERRA RX PARTNERS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No.:  3:15-CV-1911-M |
| SPUD SOFTWARE COMPANY, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND PRELIMINARY INJUNCTION**

Before the Court is Plaintiff's Motion for Preliminary Injunction.  For the reasons stated below, the Motion is **GRANTED**, to the extent described below.

**BACKGROUND**

Plaintiff Senderra RX Partners, LLC ("Senderra" or "Plaintiff") filed its Original Petition and Application for Injunctive Relief in state court on May 22, 2015, alleging against Defendant Spud Software Company, Inc. ("Spud" or "Defendant") four claims: breach of contract, violations of the Texas Uniform Trade Secrets Act, tortious interference with contractual relations, and tortious interference with business relations. [Docket #1-3].

On May 26, 2015, the state court entered a Temporary Restraining Order in favor of Plaintiff, which enjoined Defendant from retaining, using, or disclosing Plaintiff's confidential or proprietary information, operating the SP1Connect website or otherwise marketing SP1Connect, and attempting to induce Plaintiff's employees to terminate their relationships with Plaintiff. [Docket #1-9].  On June 2, 2015, with the Temporary Restraining Order still in effect, Defendant removed the suit to this Court.  On June 9, 2015, this Court found good cause to extend the Temporary Restraining Order for fourteen days, and set a hearing on Plaintiff's Motion for

1

Preliminary Injunction for June 22, 2015.  [Docket #16].

The Court held an evidentiary hearing on the Motion for Preliminary Injunction on June 22, 2015.  After presenting evidence, the parties agreed to a second extension of the Temporary Restraining Order for two additional weeks for Defendant to compile and produce documents, move for protection, and give Plaintiff's counsel sufficient time to review the documents. [Docket #39].  On July 6, 2015, the Court resumed the preliminary injunction hearing.  At the conclusion of the hearing, the Defendant agreed to a third extension of the Temporary Restraining Order, until August 3, 2015, so the parties could submit briefs synthesizing the evidence to assist the Court in its determination of whether to enter a Preliminary Injunction.[1]

Senderra's claims arise out of its dealings with Spud with respect to Senderra's specialty pharmacy business.  After developing workflows that streamlined the processing of reimbursements for specialty pharmacy drugs, Senderra hired Spud to create computer software embodying Senderra's workflows, ultimately called "CarePath."  The parties entered into a contractual Confidentiality Agreement, under which Defendant agreed, among other things, to protect Plaintiff's "Confidential Information," to refrain from using Plaintiff's Confidential Information for its own benefit or profit, and to abstain from recruiting Plaintiff's employees. [Docket #1-8, p. 40-44; Plaintiff's Exhibit 2 from Preliminary Injunction Hearing ("Pl.'s Ex. 2")].  The relevant paragraphs of the Confidentiality Agreement are as follows:

> 1. Confidential Information. "***Confidential Information***" means any and all of the following information that has been or may hereafter be disclosed or furnished by Senderra Rx or its representatives, to [Spud] or to [Spud]'s officers, directors, controlling persons, affiliates, partners, employees, lenders, agents, advisors or representatives ("***Representatives***"), in any form, whether in writing, orally, electronically or otherwise, or which otherwise becomes available, to [Spud] or its Representatives, by observation, inspection or otherwise in connection with the Business Transaction:

---

[1] The Court's recitation of the facts in this section is based on the evidence presented in the two evidentiary hearings on the Motion for Preliminary Injunction.

(a) all information that is a trade secret and which is designated as such in writing by Senderra Rx at the time of disclosure or, in the case of oral disclosures, within thirty (30) days after disclosure ("***Trade Secret***");

(b) all information concerning product specifications, data, know-how, formulae, compositions, processes, designs, concepts, know-how, sketches, photographs, graphs, drawings, samples, inventions and ideas, past, current, and planned research and development, current and planned manufacturing or distribution methods and processes, prototypes, products, methodologies, techniques, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, computer software and programs (including object code and source code), computer software and database technologies, systems, structures and architectures (and related processes, formulae, composition, improvements, devices, know-how, inventions, discoveries, concepts, ideas, designs, methods and information);

(c) information concerning the business and affairs of Senderra Rx (which includes but is not limited to historical financial statements, financial projections and budgets, historical and projected sales, capital spending budgets and plans, the names and backgrounds of key personnel, personnel training techniques and materials); and

(d) all notes, analyses, compilations, studies, summaries and other material prepared by [Spud] or its Representatives to the extent containing or based, in whole or in part, upon any information included in subsections (a),(b), or (c) above.

2. [Spud] Acquires No Rights Through Disclosure. The Parties acknowledge that Confidential Information is being disclosed to [Spud] in connection with the Business Transaction. [Spud] and its present and former Representatives shall not acquire any right, title or interest in the Confidential Information provided by Senderra Rx, and the Parties agree that the Confidential Information is and shall remain the sole property of Senderra Rx.

4. No License, Transaction, or Business Established. Nothing in this Agreement is intended or shall be construed as creating a partnership or joint venture or other such arrangement or as granting or conferring any rights by license or otherwise, expressly or by implication, under any patents, patent applications, trademarks, trade names, copyrights, technical information, know-how or other intellectual property right of Senderra Rx, except as explicitly provided herein. Nothing herein is intended to obligate Senderra Rx to enter into any transaction or business relationship. Any such obligation shall only be undertaken by means of a separate written agreement signed by both Parties and subject to appropriate corporate approvals.

5. Non-Disclosure by [Spud] or its Representatives. Neither [Spud] nor its present or former Representatives will at any time without the prior written consent of Senderra Rx

disclose, display, provide, forward or otherwise make available any Confidential Information to, or permit access to Confidential Information by, anyone other than authorized agents and employees of [Spud], and then only to as a small group of such [Spud] authorized agents or employees as reasonably practicable and necessary and on a need-to-know basis only and solely for the purpose of completing the Business Transaction, and such persons clearly understand the obligation of [Spud] and its present and former Representatives to maintain the confidentiality and security of such Confidential Information and to use the same only for the purposes of the Business Transaction. [Spud] further agrees that it will at all times exercise best efforts to keep secure and keep secret any and all Confidential Information. Neither [Spud] nor its present and former Representatives shall, at any time, without written consent of Senderra Rx, use any Confidential Information for its, his, or their own benefit or profit or for any other business, legal, or competitive purpose. [Spud] agrees to indemnify and hold Senderra Rx harmless from and against any and all loss, damage, cost or expense resulting from: (i) any misuse of or improper disclosure of Confidential Information, whether by [Spud] or by any of its present and former Representatives or by any other person to whom [Spud] or any of its present and former Representatives disclosed the Confidential Information; or (ii) any other violation of this Agreement by [Spud] or by any of its present and former Representatives or by any other person to whom [Spud] or any of its present and former Representatives disclosed the Confidential Information.

7. Exclusions: Notwithstanding the foregoing, the requirements of confidentiality and the limitations of use and disclosure described herein shall not apply to any of the following types of Confidential Information:

    (a) information which, prior to the time of disclosure by Senderra Rx, was known to [Spud] as evidenced by its written records;

    (b) information which, at the time of disclosure to [Spud], was published or known publicly or was otherwise in the public domain;

    (c) information which, after disclosure to [Spud], is published or becomes publicly known or otherwise becomes part of the public domain other than as a result of a breach of this Agreement by [Spud] or any of its present and former Representatives or by any other person to whom [Spud] or any of its present and former Representatives disclosed the Confidential Information;

    (d) information which is disclosed to [Spud] in good faith by an unrelated third party who is not under obligation of confidence and secrecy to Senderra Rx at the time such third party discloses the information to [Spud];

    (e) information which is independently developed by [Spud] without use of or reference to the Confidential Information.

If [Spud] is charged with breach of this Agreement for disclosure of Confidential Information, it shall be [Spud]'s burden to show that the Confidential Information

disclosed was excepted as provided in this Section 7.

8. <u>Trade Secrets.</u> Notwithstanding any other provision of this Agreement to the contrary, any Trade Secrets of Senderra Rx shall be entitled to all of the protections and benefits under the Uniform Trade Secrets Act and all other applicable law. If any information that Senderra Rx or its representatives deems to be a Trade Secret is not a Trade Secret, or is found by a court of competent jurisdiction not to be a trade secret for the purposes of this section 8, such information shall still be considered Confidential Information of Senderra Rx for purposes of section 5. In the case of Trade Secrets, [Spud] on behalf of itself and its present and former Representatives waives any requirement that Senderra Rx submit proof of economic value of any Trade Secret or post a bond or other security.

Although Spud made a written proposal to Senderra on October 21, 2011 that was never signed by Senderra, [Docket #1-8, p. 27-28] the parties first agreed, apparently orally, to joint ownership [Docket #1-8, p. 21]; however, Spud and Senderra signed an "Amendment" dated November 21, 2012, which included the following provisions:

F. **Title to CarePathSRX**

- Upon execution of this Amendment and upon its Effective Date, [Spud] hereby assigns any and all ownership rights and title to the intellectual property and source code associated with the product called CarePathSRx to Senderra Rx Limited Partners LLC.

- Spud agrees that it will not disclose or use any Senderra exclusive business processes or code in any other applications for other companies or resell the system in part or in whole.

G. **Additional terms**

- Each party agrees not to hire or attempt to hire the other party's employees until the expiration of 18 months following the termination of this Proposal, without the prior written consent of the other party.

[Docket #1-8, p. 34-35; Pl.'s Ex. 3].

After Spud completed CarePath, it began developing what it calls standardized software for use in the specialty pharmacy business, which it ultimately named "SP1Connect."  Plaintiff alleges that Defendant used the information Defendant gleaned from its work on CarePath to create SP1Connect, in violation of the Confidentiality Agreement, the Amendment and the Texas

Uniform Trade Secrets Act.  Plaintiff also accuses Defendant of recruiting Plaintiff's former

employee, Stephen Lund, in breach of his employment agreement with Plaintiff and of the

Amendment, so that Defendant could use Lund's knowledge of CarePath to develop

SP1Connect.

Defendant argues it had knowledge of workflows and other common practices in the

specialty pharmacy business due to its prior work with Diplomat, another specialty pharmacy

company.  Defendant also argues that Defendant's SP1Connect software is not based on

CarePath, and that any common information in CarePath and SP1Connect is not protected by the

Confidentiality Agreement or trade secret law.

## LEGAL STANDARD

"To be entitled to a preliminary injunction, a movant must establish (1) a likelihood of

success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury

if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4)

that the grant of an injunction will not disserve the public interest."  *Ladd v. Livingston*, 777 F.3d

286, 288 (5th Cir. 2015) (quoting *Trottie v. Livingston,* 766 F.3d 450, 451 (5th Cir. 2014)).  If a

party fails to satisfy any of the four elements, a district court may not grant a preliminary

injunction.  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.

1985).  A preliminary injunction is an "extraordinary remedy" that is to be granted "only when

the movant, by a clear showing, carries the burden of persuasion" as to each element. *Digital*

*Generation, Inc. v. Boring*, 869 F.Supp.2d 761, 772 (N.D. Tex. 2012) (quoting *Holland Am. Ins.*

*Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

## ANALYSIS

### A.  Likelihood of Success on the Merits

A likelihood of success on the merits requires a movant to present a prima facie case.

*Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir.

2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)).  To be successful on the

merits of its breach of contract claim, Senderra must prove (1) the existence of a valid contract;

(2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) injury resulting from that breach.  In this case, the first and second elements

are not in dispute—the parties undoubtedly executed a Confidentiality Agreement and

Amendment, and Spud has not pursued the argument that it was excused from performing

because Senderra did not tender performance.

As to the third element, Plaintiff alleges that Defendant breached the Confidentiality

Agreement and the Amendment by using Senderra's CarePath source code, workflow processes,

and other Confidential Information to develop SP1Connect for its own business and profit.  The

testimony at the preliminary injunction hearing persuaded the Court that there is a substantial

likelihood that Senderra will be able to prove that Spud breached paragraphs 5 and 8 of the

Confidentiality Agreement, and paragraphs F and G of the Amendment.

The Confidentiality Agreement's definition of Confidential Information [Pl.'s Ex. 2, at 1,

¶ 1] is very broad, but both parties agreed to its provisions, and Senderra paid Spud over

$900,000 for Spud's services.  Confidential Information expressly includes Senderra "know-

how," "concepts," and "computer software and programs," expressly including "object code and

source code."  With regard to "computer software and database technologies, systems, structures,

and architectures," it encompasses "related processes, formulae, composition, improvements,

devices, know-how, inventions, discoveries, concepts, ideas, designs, methods and information."
[Id.].  Under any interpretation of this Agreement, Spud's knowledge of Senderra's workflow,
and the source code itself, are Senderra's Confidential Information.  Although Spud wrote the
software embodying Senderra's workflows, using Senderra's Confidential Information,
paragraph 2 of the Confidentiality Agreement confirms that Spud acquired no rights to
Senderra's Confidential Information, and paragraph 4 confirms that Spud and Senderra did not
create a partnership, joint venture, or any other relationship that would confer on Spud any rights
in Senderra's Confidential Information.[2]

Paragraph 5 of the Confidentiality Agreement provides that "Neither [Spud] nor its
present and former Representatives shall, at any time, without written consent of Senderra Rx,
use any Confidential Information for its, his, or their own benefit or profit or for any other
business, legal, or competitive purpose." [Pl.'s Ex. 2 at ¶ 5].  No such written consent was ever
given by Senderra.  The Amendment provides additional coverage, providing that Spud agreed
"not [to] disclose or use any Senderra exclusive business *processes or code* in any *other*
*applications* for other companies or resell the system *in part or in whole*." [Pl.'s Ex. 3 at ¶ F]
(emphasis added).

Plaintiff met its burden of showing a substantial likelihood that Plaintiff's Confidential
Information, as defined by paragraph 1 of the Confidentiality Agreement, was used in violation
of paragraphs 5 and 8 of the Confidentiality Agreement, and paragraph F of the Amendment.
Although the Court highlights some of the testimony below, in reaching its conclusion, the Court
considered all of the admitted evidence presented by both parties.

---

[2] Although Spud and Senderra initially agreed that Spud and Senderra would jointly hold the rights
to CarePath [Docket #1-8, p. 21], ultimately they agreed to full ownership by Senderra. [Docket
#1-8, p. 34-35; Pl.'s Ex. 3 at ¶ F.].

Chris Bolton, a hardware and software engineer who reviewed and compared the source code of CarePath and SP1Connect, identified several similarities between the two source codes. [June 22, 2015 Hrg. Trs. at 107-137].  Bolton noted that small details, such as the case of characters and the order of the lines of code, matched, and that the matching details would not have been expected to appear randomly.  [Id. at 112, 118].  Bolton also testified that he discovered the name "Senderra Specialty Pharmacy" inside the source code of SP1Connect.  [Id. at 115].  Although Defendant's representatives disputed the significance of that reference, the Court was not persuaded that it was not germane to the issues raised by the request for injunctive relief.

Monty Myers, the Chief Executive Officer of a software company with extensive programming experience, testified that he also reviewed and compared CarePath and SP1Connect.  [July 6, 2015 Hrg. Trs. at 68-105].  He opined that the sequence of code, the spelling of particular words, the use of the same data, and the timing of the development of SP1Connect showed that SP1Connect was not developed independently of CarePath.  [Id. at 69-73, 78].[3]  The Court found that testimony persuasive.

Will Howard, the President of Senderra, explained that Plaintiff's unique workflow procedures are integrated into SP1Connect, as he understands SP1Connect to operate.  [June 22, 2015 Hrg. Trs. at 18-138].  As an example, Howard noted that Plaintiff had developed a formula for determining the "average acquisition cost" of a drug, and that same formula is included in SP1Connect.  [Id. at 66-67].  SP1Connect embodies the Confidential Information of Senderra.

Although Defendant presented contrary evidence that the Court considered, the Court

---

[3] Defendant challenges the accuracy of a demonstrative Myers used in his testimony, but the Court has not relied on that demonstrative in ruling on the Motion for Preliminary Injunction.

finds that it is substantially likely that Plaintiff will prevail on its breach of contract claim.  *See*

*Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir.

2013) (explaining that the Plaintiff's burden on preliminary injunction is not the same as its

burden on summary judgment, such that a material question of fact may remain).  The Court

need not believe there is an absolute certainty that Plaintiff will succeed.  *Chambers v. Coventry*

*Health Care of Louisiana, Inc.*, 318 F. Supp. 2d 382, 389 (E.D. La. 2004).

Defendant maintains that it had prior and specific knowledge of the specialty pharmacy

industry due to work it did for Diplomat before it was hired by Plaintiff, and that Defendant did

not draw on its experience with Plaintiff in developing SP1Connect.  The Confidentiality

Agreement excludes from protection information that was known by the Defendant before

Defendant began working for the Plaintiff—but only "as shown by [Defendant's] written

records," and Defendant has the burden of proof to establish the exceptions.  [Pl.'s Ex. 2. at 3, ¶

7].  Defendant did not present such records or otherwise meet its burden.

The Court finds the Defendant's failure to present either documentation, or testimony

from Diplomat, to support its claim that its prior detailed knowledge of the industry lead to the

development of SP1Connect, is fatal to its defense at this juncture of the case.[4]  To the extent

---

[4] On June 26, 2015, the Court ordered Defendant to submit to Plaintiff documents reflecting its programming work for Diplomat.  [Docket #43].  At the resumption of the Preliminary Injunction hearing, Defendant's then-corporate representative, Kari Bishop, testified that to produce the documents, she spoke to a single employee at Defendant Spud Software, who provided Ms. Bishop with "a box of documents showing all of the stuff they did."  [July 6, 2015 Hrg. Trs. at 26-27]. She explained, "I just was coming down that next day to Texas, so I just grabbed enough that would fit in my folder. I wasn't sure that I was going to be able to produce them or use them at that time. So I just—there's probably going to be some repetitive documents in there that are more of the same kind of things that you'll see here. I just tried to grab a variety of things that we had done."  [Id.].  When the Court asked why the remaining documents had not been produced pursuant to the Court's order, Ms. Bishop responded, "I have them in a box. There's probably—I don't even know. I can produce them. I'm not sure—just going to be more of what we did for Diplomat." [Id.].  This testimony shows Defendant's failure to provide complete evidence on the subject of its

Defendant argued that the various aspects of SP1Connect that match aspects of CarePath are not proprietary, and instead are publicly known information, the Court found those arguments unconvincing.  Although Defendant argued that some SP1Connect source code was created using open source libraries and auto-generated content, Defendant failed to overcome Plaintiff's showing that the two source codes contained extensive similarities that could not be explained by chance or publicly available materials.  The evidence established a prima facie case that Defendant used Plaintiff's Confidential Information to develop SP1Connect, in breach of the parties' agreements.

As to the last element of Plaintiff's claim, Plaintiff has shown that it is being injured by Defendant's breach of the Confidentiality Agreement.  Plaintiff's competitive edge in the specialty pharmacy industry is the result of its unique and efficient workflow processes, embodied in CarePath, which the Court concludes Defendant has attempted to market to Plaintiff's competitors through SP1Connect.  Accordingly, the Court finds that Plaintiff has satisfied the first element of the preliminary injunction standard—a likelihood of success on the merits.

### B.  Substantial Threat of Irreparable Injury

To satisfy the "irreparable harm" prong of the test, a movant must show that "irreparable injury is *likely* in the absence of an injunction."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 569 (5th Cir. 2010).  Here, the Court finds that unless Defendant is enjoined from marketing SP1Connect to Plaintiff's competitors, Plaintiff's competitive success, based on its unique and confidential workflow processes, will be irreparably jeopardized, because Plaintiff's competitors

---

prior knowledge and work in the specialty pharmacy industry.

will become exposed to and gain knowledge of Plaintiff's Confidential Information and be able to use that Confidential Information unfairly, to Senderra's detriment.

### C.  Balance of Harms and the Public Interest

The third element to support a preliminary injunction evaluates whether the threatened injury outweighs any harm that will result if the injunction is granted.  In evaluating this element, the Court weighs the severity of the impact on the nonmovant if the preliminary injunction is granted, against the hardship that would occur to the movant if the injunction were denied. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994).  Plaintiff's business will be irreparably damaged if its competitors begin utilizing SP1Connect and thereby obtain and use Plaintiff's Confidential Information.  Defendant has not provided persuasive evidence that it would be materially harmed by a delay in its marketing of SP1Connect, since Defendant did not persuasively prove a substantial investment in SP1Connect, and Defendant is not dependent on SP1Connect sales for revenue.

Finally, the fourth element evaluates whether the grant of an injunction will disserve the public interest.  Here, the Court weighs the public's interest in preserving intellectual property rights and discouraging unfair competition.  *See generally Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989).  The Court finds that no public interest factors are disserved here.  The Plaintiff hired Defendant to develop a product using Plaintiff's Confidential Information that would make Plaintiff's business more efficient, and under the terms of the Confidentiality Agreement and the Amendment, Defendant was obligated to protect Plaintiff's Confidential Information and not to profit from it.  Holding Defendant to the terms of those agreements does not disserve the public interest; it furthers it.

Because the Court finds that Plaintiff has satisfied the four-pronged test for obtaining a preliminary injunction as to Plaintiff's breach of contract claims, and no further relief would be granted if the Court were to find that Plaintiff also established the elements of Plaintiff's claims for trade secret violations and for tortious interference, the Court will not now address those other claims.  As for Plaintiff's request that Defendant be enjoined from soliciting or attempting to solicit Plaintiff's employees to terminate their relationships with Plaintiff, the Court finds that Plaintiff has failed to meet its burden to obtain a preliminary injunction on that subject. Although Senderra showed that one person left Senderra to work for Spud, it did not present evidence that similar conduct is likely to occur in the future, and the Court finds that any threat of irreparable injury to Senderra due to that single occurrence is not substantial, particularly in light of the nature of the injunction being entered.

*     *     *

For the foregoing reasons, Spud and its officers, directors, controlling persons, affiliates, partners, employees, lenders, agents, advisors, representatives, and all other individuals and businesses in active concert and participation with Spud, are **ENJOINED** from: (1) retaining, using, and/or disclosing Senderra's Confidential Information[5] received or generated by

---

[5] "Confidential Information," as used in this injunction, means:

(1) all information concerning product specifications, data, know-how, formulae, compositions, processes, designs, concepts, know-how, sketches, photographs, graphs, drawings, samples, inventions and ideas, past, current, and planned research and development, current and planned manufacturing or distribution methods and processes, prototypes, products, methodologies, techniques, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, computer software and programs (including object code and source code), computer software and database technologies, systems, structures and architectures (and related processes, formulae, composition, improvements, devices, know-how, inventions, discoveries, concepts, ideas, designs, methods and information);

(2) information concerning the business and affairs of Senderra Rx (which includes but is not

Defendant relating to Plaintiff's business or the CarePath software; and (2) except as permitted

by the following two paragraphs, soliciting or attempting to solicit business or providing services

and/or any products competitive to CarePath or SP1Connect, including, but not limited to,

operating SP1Connect websites (or any website of a similar program) and/or marketing or

offering SP1Connect for sale.

Pursuant to a protocol to be established by Special Master Jeff Kaplan, Defendant is

**ORDERED** to (1) eliminate the CarePath source code from its custody or control, including

from its storage devices and media, and return the source code to Senderra, and (2) eliminate

access by Spud employees or representatives to SP1Connect, so that Spud cannot use either

CarePath or SP1Connect to create new software.  After (a) returning to Plaintiff the CarePath

source code and completely eliminating all of the CarePath source code from Spud's custody or

control, and (b) screening SP1Connect so that it cannot be accessed by any Spud employee or

representative unless and until Defendant prevails in this case by obtaining a judgment in its

favor, Defendant may—without violating this injunction—attempt to develop brand new

software for specialty pharmacy companies, so long as Defendant's employees or representatives

working on any such future project for Spud had no role in developing either CarePath or

SP1Connect.

Nothing in this Order shall prohibit Spud from continuing to provide services not

---

limited to historical financial statements, financial projections and budgets, historical and
projected sales, capital spending budgets and plans, the names and backgrounds of key
personnel, personnel training techniques and materials); and

(3) all notes, analyses, compilations, studies, summaries and other material prepared by Spud or
its representatives to the extent containing or based, in whole or in part, upon any
information included in subsections 1 or 2 above.

involving SP1Connect or CarePath pursuant to any written agreement that predated Spud's Confidentiality Agreement with Senderra.

Plaintiff is ordered to post, on or before August 10, 2015, at 5:00 P.M., an additional bond in the amount of $100,000 to secure payment of any damages sustained if Defendant is found to have been wrongfully enjoined.

Plaintiff's claim for attorney's fees is reserved until a final determination on the merits.

**SO ORDERED** this 3rd day of August, 2015, at 12:15 P.M.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**